# EXHIBIT A

# CLASS ACTION SETTLEMENT AGREEMENT

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR 1) FINAL CERTIFICATION OF PLAINTIFF CLASS PURSUANT TO FED. R. CIV. P. 23(b)(3) FOR SETTLEMENT PURPOSES ONLY, AND 2) FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

**CASE NO.: 1:20-cv-03775-TFH**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LESLIE ANN WILKIE PELTIER;                    )
CHRYSTEL AURORA CORNELIUS;                    )
DELVIN CREE;                                  )
CAROL ANN DAVIS;                              )
ANDREA LAVERDURE;                             )
ROBERTA MORIN LORD;                           )
COREENA JOY PATNAUDE;                         )
BARBARA ANN MARIE POITRA;                     )
LARRY JOSEPH MORSETTE, JR.;                   )
WILLIAM DALLAS WADE SUN CHILD;                )
JOHN WAYNE GILBERT;                           )
CAROL SUE DONEY HOFELDT;                      )
LEONA KIENENBERGER;                           )
LARRY JAMES SALOIS;                           )
DAWN LOUISE ROATH;                            )    No.:  1:20cv03775-TFH
EUNICE MAE BELLANGER;                         )
WILFRED VERNON DENTZ;                         )    Judge Thomas F. Hogan
DOROTHY MARILYN GAY;                          )
FRANK STEPHEN LHOTKA;                         )    Electronically Filed
BERNADETTE ANNE SPAHR;                        )
REGINA RUTH HOWARD;                           )
CHARLENE BIG KNIFE;                           )
TWILA MARIE JEROME;                           )
TOBY LEE LAMERE;                              )
DALE ROGER PESCH;                             )
GLADYS J. TORKELSON;                          )
DEANNA M. TROTTIER WIRTZBERGER;               )
GAIL EAGLEMAN;                                )
GAILE LYNN TORRES;                            )
CHANE WEYMER SALOIS;                          )
MARYJO ELIZABETH RUST;                        )
LAVONNE MARIE BROWN;                          )
SHANE MICHAEL BRIEN;                          )
TACEY LYNN FOSTER;                            )
RICHARD EDWARD LAWSON;                        )
PEGGY ANN PENA;                               )
DANIEL BOYD WILLIAMS;                         )
MIKEALINDA MARAE GRANT;                       )
ANNETTE MARIE CHARETTE;                       )
ROBERT S. DECOTEAU;                           )
LOLA GREATWALKER;                             )
ANDREW L. LAVERDURE;                          )
TAMMY JEAN WILKIE POITRA;                     )

LEE WILLIAM WILKIE;                          )
KENNETH ZANE BLATT ST. MARKS;                )
JOSEPHINE OATS CORCORAN;                     )
YVONNE MARIE HILL;                           )
KATHLEEN ANN FRANKLIN;                       )
DEBORAH LEA RONNENG;                         )
AMELIA EVETTE LAFRINIERE ROY;                )
JOYCE ELAINE DEMARRE STEWART;                )
AARON VASECKA;                               )
ANDREW LESLIE VASECKA;                       )
DEVI COLE;                                   )
PETER FREDRICK DONEY;                        )
DEBRA JOSEPHINE NEWGARD;                     )
MARIE LOUISE NIELSEN;                        )
JAMES MELVIN WEIGAND;                        )
GEORGI ANN MITCHELL;                         )
TAMMIE MAY SIMMONS;                          )
TINA MARIE TAYLOR;                           )
JEREMY JOHN LEE RINDAHL;                     )
BELINDA MAY HARVILL;                         )
EDWARD TIMOTHY RAMSTED;                      )
and KATHLEEN BUTCHER,                        )
for and on behalf of themselves             )
and all others similarly situated,          )
                                             )
                 Plaintiffs,                 )
                                             )
         v.                                  )
                                             )
SCOTT DE LA VEGA,                            )
Acting Secretary of the Interior,           )
United States Department of the Interior,   )
1849 C Street, N.W.,                         )
Washington, D.C.  20240;                     )
                                             )
ANDREW BAUKOL,                               )
Acting Secretary of the Treasury,           )
United States Department of the Treasury,   )
1500 Pennsylvania Avenue, N.W.,             )
Washington, D.C.  20220, and                )
                                             )
THE UNITED STATES OF AMERICA,                )
                                             )
                 Defendants.                 )
_____ )

## CLASS ACTION SETTLEMENT AGREEMENT

I.      RELEVANT BACKGROUND

      A.      CFC LITIGATION

      B.      CFC ADR PROCESS

      C.      PARTIES' AGREEMENT

II.     SETTLEMENT TERMS AND CONDITIONS

      A.      DEFINITIONS

            1.      The 1964 Award

            2.      The 1964 Award Distribution

            3.      The 1971 Distribution Act

            4.      The 1971 Distribution Act Regulations

            5.      The 1980 Award

            6.      The 1980 Award Distributions

            7.      The 1982 Distribution Act

            8.      The 1982 Distribution Act Regulations

            9.      CFC

            10.     CFC ADR Judge

            11.     CFC Companion Case

            12.     Chippewa Cree Tribe

            13.     Claim Filing Deadline

            14.     Claim Form

            15.     Class Action

16. Class Action Settlement Agreement

17. Class Counsel

18. Class Counsel Fees, Expenses, and Costs

19. Class Representative

20. Class Representative Service Award

21. Complaint

22. Court

23. Day

24. Deceased

25. Defendants

26. Defendants' Counsel

27. Eligible Heirs

28. Escrow Account

29. Escrow Agent

30. Estate

31. Exclusion

32. Fairness Hearing

33. Final Approval

34. First-Line Heir

35. Group Representatives

36. Individual Plaintiffs

37. Interior or Interior Defendants

- 4 -

38. Legal Representative of a Settlement Class Member

39. Little Shell Tribe

40. Long-Form Notice

41. Named Individual Plaintiff

42. Named Representatives

43. Non-Member Lineal Descendants

44. Opt-out

45. Original Individual Beneficiaries

46. Parties

47. Parties' Counsel

48. Pembina Band of Chippewa Indians

49. Pembina Judgment Fund

50. Pembina Judgment Fund Beneficiaries

51. Preliminary Approval

52. Probate

53. Proof of Death

54. Proof of Heirship

55. Proof of Identity

56. Putative Settlement Class Member

57. Qualified Settlement Fund

58. Second-Line Heir

59. Settlement Administration Information Telephone Line

60. Settlement Administration Information Website

61. Settlement Administrator

62. Settlement Administrator Fees, Expenses and Costs

63. Settlement Class

64. Settlement Class Members

65. Settlement Distribution

66. Settlement Distribution Period

67. Settlement Proceeds

68. Summary Notice

69. Treasury or Treasury Defendants

70. Tribal Beneficiaries

71. Treasury Offset or Levy

72. Tribal Law or Action

73. Tribal Plaintiffs

74. Tribal Plaintiffs' Settlement Agreement

75. Turtle Mountain Band

76. Undistributed Settlement Proceeds

77. White Earth Band

B. CONFIDENTIALITY

C. SETTLEMENT CLASS CERTIFICATION

D. PRELIMINARY APPROVAL

E. NOTICE

1.      Provision and Timing of Notice to Settlement Class

2.      Long-Form Notice by Direct Mail

3.      Summary Notice Publication and Posting

4.      Other Notice

F.      SETTLEMENT CLASS EXCLUSION / OPT-OUT

1.      Exclusion / Opt-out Effects

2.      Exclusion / Opt-out Deadline

3.      Exclusion / Opt-out Requirements

4.      Failure to Meet Exclusion / Opt-out Requirements

5.      Exclusion / Opt-out Retractions

6.      Exclusion / Opt-out List

G.      MINIMUM SETTLEMENT CLASS MEMBER PARTICIPATION REQUIREMENT

H.      OBJECTIONS AFTER NOTICE AND BEFORE FAIRNESS HEARING

1.      Objections

2.      Objection Deadline

3.      Other Objection Requirements

4.      Compilation of Objections

I.      SETTLEMENT ADMINISTRATOR'S AFFIDAVIT OF NOTICE AND MAILING

1.      Submission Deadline

2.      Affidavit Contents

3.      Attachment to Motion for Final Approval

J.    FAIRNESS HEARING AND FINAL APPROVAL

    1.    Fairness Hearing Date, Time, and Location

    2.    Motion for Final Approval

    3.    Right to Appear

    4.    Fairness Hearing Determinations

    5.    No Opposition by Defendants

    6.    Binding Effect of Final Approval

    7.    Effect of No Final Approval or No Final Approval Without Material Changes

    8.    Precluded Use of this Class Action Settlement Agreement

    9.    Restoration of Status Quo Ante

    10.    Start of Settlement Distribution

K.    PAYMENT OF SETTLEMENT PROCEEDS

    1.    Settlement Proceeds Components

    2.    Settlement Proceeds Amount

    3.    Defendants' Payment to Escrow Account and Discharge

L.    PRELIMINARY ALLOCATIONS OF SETTLEMENT PROCEEDS

    1.    Allocation to Settlement Class Members

    2.    Allocations to the Tribal Plaintiffs

    3.    Class Representative Service Awards

    4.    Class Counsel Fees, Expenses, and Costs

    5.    Settlement Administrator Fees, Expenses, and Costs

M.     SETTLEMENT DISTRIBUTION PROCESS AND PAYMENTS

     1.     Transfer of Settlement Proceeds from Escrow Account to Qualified Settlement Fund

     2.     Distribution of Allocated Settlement Proceeds

     3.     Reissuances of Settlement Distribution Payments

     4.     Undistributed Settlement Proceeds to Tribal Plaintiffs

     5.     Payment to Settlement Administrator

     6.     Settlement Administrator's Cost Accounting, Reporting, and Payment

     7.     Information Regarding Effect of Federal Income Tax Implications of this Class Action Settlement Agreement

N.     WAIVERS, RELEASES, DISCHARGES, AND COVENANTS

     1.     Waivers, Releases, Discharges, and Covenants Not to Sue Regarding Management or Accounting of PJF Before Final Approval

     2.     Waivers, Releases, Discharges, and Covenants Not to Sue Regarding Allocation, Distribution, Administration, or Use of Settlement Proceeds By Settlement Administrator, Individual Plaintiffs, and Tribal Plaintiffs

O.     DEFENDANTS' ACTIONS REGARDING UNCLAIMED PJF FUNDS AND SETTLEMENT CLASS MEMBERS' ACCEPTANCES OF DEFENDANTS' COMPLIANCE

     1.     Unclaimed PJF-Related Funds from 1964 Award Distribution and 1980 Award Distribution

     2.     One Hundred Percent (100%) Disbursement of PJF-Related Funds

     3.     Settlement Class Members' Acceptance of Defendants' Compliance with Applicable Law

     4.     Settlement Class Members' Acceptance of Per Capita Distribution Obligation

P.   DISMISSAL WITH PREJUDICE AND LIMITED CONTINUING JURISDICTION

Q.   NON-ASSISTANCE BY SETTLEMENT CLASS MEMBERS, CLASS COUNSEL, OR CONSULTANTS

R.   INTERPRETATION AND ENFORCEMENT

    1.   Entire Class Action Settlement Agreement Between Parties, Modification, and Non-Severability

    2.   Effects of This Class Action Settlement Agreement and of Tribal Plaintiffs' Settlement Agreement

    3.   Arm's Length Transaction; Materiality of Terms and Conditions

    4.   Compliance with Anti-Deficiency Act

    5.   Computation of Time

    6.   Captions

    7.   Construction

    8.   Applicable Law

    9.   Authority of Parties to Enter Into Class Action Settlement Agreement

    10.   Execution in Counterpart

    11.   ADR Process Relating to this Class Action Settlement Agreement

    12.   No Third-Party Beneficiaries

III.   FULL EXECUTION OF CLASS ACTION SETTLEMENT AGREEMENT

The Parties herein—Named Individual Plaintiffs Leslie Ann Wilkie Peltier, *et al.*, on behalf of themselves and all other Individual Plaintiffs, as defined below, and Defendants Scott de la Vega, Acting Secretary of the Interior, in his official capacity; Andrew Baukol, Acting Secretary of the Treasury, in his official capacity; the United States Department of the Interior ("Interior Department" or "Interior"); the United States Department of the Treasury ("Treasury Department" or "Treasury"); and the United States—hereby enter into the following Class Action Settlement Agreement:

Subject to this Court's Final Approval of this Class Action Settlement Agreement, as required by Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23 and defined herein, the Parties hereby jointly stipulate and agree that, in consideration of the promises, waivers, releases, discharges, covenants, and acceptances set forth in this Class Action Settlement Agreement and in the Settlement Agreement between the Chippewa Cree Tribe, the Turtle Mountain Band, the Little Shell Tribe, and the White Earth Band, (collectively, "Tribal Plaintiffs"), and the United States ("Tribal Plaintiffs' Settlement Agreement"), in the companion case in the United States Court of Federal Claims ("CFC"), entitled *Chippewa Cree Tribe of the Rocky Boy's Reservation, et al. v. United States,* No. 92-675L (Fed. Cl. Sept. 30, 1992) ("CFC Companion Case"), that, upon Final Approval, this Class Action and the CFC Companion Case shall be settled, compromised, and dismissed with prejudice, in accordance with the terms and conditions of this Class Action Settlement Agreement and of the Tribal Plaintiffs' Settlement Agreement.

# I. RELEVANT BACKGROUND

A. **CFC LITIGATION**

1. On September 30, 1992, the Chippewa Cree Tribe, the Turtle Mountain Band, and the Little Shell Tribe lodged the CFC Companion Case regarding the United States' accounting and management of the Pembina Judgment Fund ("PJF"). *See Chippewa Cree Tribe*, No. 92-675, ECF No. 1. The White Earth Band was added as a Plaintiff in the CFC Companion Case in 2004. *Id.*, ECF No. 178. The PJF consists of judgment awards made by the Indian Claims Commission ("ICC") and satisfied by congressional appropriations to compensate the Pembina Band for certain lands that the Pembina Band ceded to the United States. Defendants held the PJF in trust for PJF Beneficiaries from the time of the congressional appropriations to the time that Defendants distributed the PJF funds to the PJF Beneficiaries. As PJF Beneficiaries, the Tribal Plaintiffs lodged the CFC Companion Case on their own behalf and on behalf of all PJF Beneficiaries who are individuals. The Tribal Plaintiffs sought, among other things, monetary compensation relating to the Interior Department's accounting and investment of the PJF. *Id.*, ECF Nos. 1, 91, and 178.

2. At the behest of the Tribal Plaintiffs and the United States, the CFC stayed the litigation of the CFC Companion Case between January 1993 and July 2002, primarily pending the completion of a project that the Interior Department undertook regarding certain tribally owned trust accounts, including the PJF accounts, and that Interior termed the "Trust Reconciliation Project" or "TRP"; the Tribal Plaintiffs' evaluation of the TRP results relating to the PJF; informal discovery efforts; and evaluation of possible settlement options. *See Chippewa Cree Tribe*, No. 92-675, ECF Nos. 3, 5, 9, 11, 14, 16, 18, 20, 23, 27, 35, 47, 51, 53, 55, 57, 59, 61, 63, 65, 67, 69,

71, 73, and 79. Active litigation in the CFC Companion Case resumed when the Tribal Plaintiffs lodged an amended complaint on September 6, 2002. *Id.*, ECF No. 91.

3.      On January 26, 2006, the CFC, *inter alia,* denied the Tribal Plaintiffs' request for class certification, stating that the claims could be litigated more efficiently under 28 U.S.C. § 1505 as a "group claim" brought by an "identifiable group" of Indians. The CFC defined the "identifiable group" as consisting of (a) all beneficiaries of the PJF 1964 Award, as defined in the 1971 Distribution Act, Pub. L. No. 92-59, 85 Stat. 158, as well as the heirs, descendants, and successors-in-interest of those beneficiaries who are deceased; and (b) all beneficiaries of the PJF 1980 Award, as defined in the 1982 Distribution Act, Pub. L. No. 97-403, 96 Stat. 2022, as well as the heirs, descendants, and successors-in-interest of those beneficiaries who are deceased. Thereafter, the CFC approved the Tribal Plaintiffs' proposal that certain individuals serve as Named Representatives of the "identifiable group." *See, e.g., Chippewa Cree Tribe*, No. 92-675, ECF Nos. 363, 365, 376, 378, 380, 397, 400, 411, 413, 448, 466, 485, 486, and 490. Further, the CFC appointed Class Counsel as counsel for the "identifiable group." *Id.*, ECF No. 338.

**B.      CFC ADR PROCESS**

1.      In 2007, at the Parties' joint request, the presiding CFC judge referred certain claims in the CFC Companion Case to Senior CFC Judge Eric G. Bruggink for alternative dispute resolution ("ADR"). *Chippewa Cree Tribe*, No. 92-675, ECF Nos. 298, 310, and 313. By February 24, 2009, the presiding CFC judge had referred all of the claims in the case to Judge Bruggink for ADR. *Id.*, ECF Nos. 359 and 370.

2.      In the course of the CFC Companion Case litigation and ADR process, the United States produced or otherwise made available to the Individual Plaintiffs and the Tribal Plaintiffs

- 13 -

voluminous documents and data maintained by the Interior and Treasury Departments relating to PJF accounts, PJF distribution eligibility applications, and distributions to PJF Beneficiaries, in response to the Individual Plaintiffs' and the Tribal Plaintiffs' formal and informal discovery requests. Also, as part of the ADR process, the United States made certain Interior and Treasury officials and employees available to the Individual Plaintiffs and the Tribal Plaintiffs for informal interviews about PJF-related accounting and investment practices. Additionally, the Parties exchanged detailed analyses prepared by their consultants regarding PJF-related accounting, investment, and distribution practices. *See Chippewa Cree Tribe*, No. 92-675, ECF Nos. 356, 358, 370, 459, and 481.

3. Class Counsel have conducted numerous investigations and analyses as part of their evaluation of the merits of the Individual Plaintiffs' and the Tribal Plaintiffs' claims against Defendants. Based upon their analyses and evaluations, Class Counsel recognize the benefits of this Class Action Settlement Agreement, as well as the potential risks, delays, and uncertainties of continued litigation, and they are satisfied that the terms and conditions of this Class Action Settlement Agreement are fair, reasonable and adequate and that the Settlement Agreement is in the best interests of all Settlement Class Members. In particular, Class Counsel are convinced, based on their review of the applicable laws and rules, especially those federal district court class action procedural rules governing requests by class members for exclusion from a settlement class ("opt-out"), that this Court provides the best forum and likelihood for the requisite fairness and finality relating to the final resolution, through a court-approved negotiated settlement, of the Individual Plaintiffs' claims.

4.      Defendants have denied any and all liability and damages to (a) any Individual Plaintiff regarding the claims and causes of action asserted in this Class Action and (b) any Individual Plaintiff or any Tribal Plaintiff regarding the claims and causes of action asserted in the CFC Companion Case. While Defendants do not admit or concede any liability or damages, any breach of trust or wrongdoing, and any defenses or arguments against the merits of or the appropriateness of class action treatment for the litigation of any claims that the Individual Plaintiffs raise before this Court or any other court or that the Individual Plaintiffs and the Tribal Plaintiffs raise in the CFC Companion Case, Defendants believe that it is in their best interests to settle the claims in this Class Action and in the CFC Companion Case, based on the terms and conditions set forth in this Class Action Settlement Agreement and in the Tribal Plaintiffs' Settlement Agreement.

## C.      PARTIES' AGREEMENT

1.      Accordingly, the Parties believe that it is in their best interests—especially given the number of Individual Plaintiffs and the Parties' requirement that the claim waivers, releases, discharges, covenants, and acceptances set forth in this Class Action Settlement Agreement and in the Tribal Plaintiffs' Settlement Agreement be as full, complete, and comprehensive as possible—to enter into this Class Action Settlement Agreement and into the Tribal Plaintiffs' Settlement Agreement, which collectively resolve and settle all of the Individual Plaintiffs' and all of the Tribal Plaintiffs' claims in this Class Action and the CFC Companion Case, in accordance with the terms and conditions set forth in this Class Action Settlement Agreement and in the Tribal Plaintiffs' Settlement Agreement.

## II. **SETTLEMENT TERMS AND CONDITIONS**

NOW, THEREFORE, THE PARTIES HEREBY JOINTLY STIPULATE TO THE FOLLOWING:

**A.     DEFINITIONS**

1.     The 1964 Award.  "The 1964 Award" shall mean the funds that Congress appropriated under the Deficiency Appropriation Act of 1964, Pub. L. No. 88–317, 78 Stat. 204, to satisfy the judgment entered by the ICC in Docket Numbers 18-A, 113 and 191, in compensation of the Pembina Band for certain lands that the Pembina Band ceded to the United States under the Treaty of October 2, 1863, 13 Stat. 667, as modified by the Treaty of April 12, 1864, 13 Stat. 689, and that the Interior Department distributed to the PJF Beneficiaries under the 1964 Award Distribution process.

2.     The 1964 Award Distribution. "The 1964 Award Distribution" shall mean the distribution by the Interior Department in 1984 of the 1964 Award pursuant to the 1971 Distribution Act and the 1964 Award Act Regulations. *See Chippewa Cree Tribe, et al. v. United States,* 69 Fed. Cl. 617, 645 (2006).

3.     The 1971 Distribution Act. "The 1971 Distribution Act" shall mean the federal statute, 25 U.S.C. §§ 1241-1248, Pub. L. No. 92-59, 85 Stat. 158, which directed and governed the Interior Department's distribution of the 1964 Award in the following manner:

        a.     The Act apportioned the 1964 Award among four PJF Beneficiaries:

            (1)     the Minnesota Chippewa Tribe;[1]

---

[1]  The 1971 Distribution Act provided that the Minnesota Chippewa Tribe "shall act in

- 16 -

(2)     the Turtle Mountain Band;

(3)     the Chippewa Cree Tribe; and

(4)     a Non-Member Lineal Descendants group.

b.     The Act required that the four PJF Beneficiaries' shares of the 1964 Award be based on the number of each Beneficiary's individual members who were determined by Interior, pursuant to the Act and its implementing regulations, to be eligible to share in Interior's distribution of the 1964 Award;

c.     The Act provided that one hundred percent (100%) of each of the four PJF Beneficiaries' shares of the 1964 Award be distributed by Interior as per capita payments to the Beneficiaries' individual members who were determined by Interior, pursuant to the Act and its implementing regulations, to be eligible to share in the distribution of the 1964 Award.

4.     The 1971 Distribution Act Regulations. "The 1971 Distribution Act Regulations" shall mean the final regulations that were issued by the Interior Department under the 1971 Distribution Act on October 19, 1971, as published at 36 Fed. Reg. 20, 226, that were amended by Interior on March 28, 1972, as published at 37 Fed. Reg. 6,290, and that directed and governed Interior's preparation of a roll of the individuals whom Interior determined, based on the 1971 Distribution Act, to be eligible to share in the distribution by Interior of the 1964 Award. Pursuant to the 1971 Distribution Act Regulations, Interior determined that 21,268 individuals were eligible

---

concert with the governing body of the Pembina Band of Chippewa Indians of the White Earth Reservation" regarding the 1964 Award funds apportioned to the Minnesota Chippewa Tribe. 25 U.S.C. § 1245. This provision is consistent with the ICC's findings that, within the Minnesota Chippewa Tribe, the White Earth Band is the proper beneficiary of the PJF 1964 Award allocation to the Minnesota Chippewa Tribe. *See, e.g.*, 6 Indian Cl. Comm'n 247, 249-250 (May 21, 1958).

to share in the distribution of the 1964 Award under the 1971 Distribution Act.

5.     The 1980 Award.  "The 1980 Award" shall mean the funds that Congress appropriated in March 1980 and December 1981, in satisfaction of the judgments entered by the United States Court of Claims regarding ICC Docket Numbers 113, 191, and 221, and in compensation of the Pembina Band for certain lands that the Pembina Band ceded to the United States under the McCumber Agreement of October 22, 1892, with the United States, which Agreement was amended and approved by Congress under the Lieu Lands Act of April 21, 1904, 33 Stat. 189, 193, and by the Pembina Chippewas on February 15, 1905, *see* S. Rep. No. 97-655 (1982), and that the Interior Department distributed to the PJF Beneficiaries under the 1980 Award Distributions process.

6.     The 1980 Award Distributions.  "The 1980 Award Distributions" shall mean the distributions by the Interior Department of the 1980 Award, in 1988 and 1994, pursuant to the 1982 Distribution Act and the 1982 Distribution Act Regulations. *See Chippewa Cree Tribe, et al. v. United States,* 69 Fed. Cl. at 645.

7.     The 1982 Distribution Act.  "The 1982 Distribution Act" shall mean the federal statute, Pub. L. No. 97-403, 96 Stat. 2022, which directed and governed the Interior Department's distribution of the 1980 Award in the following manner:

     a.     The Act apportioned the 1980 Award among five PJF Beneficiaries (four of which were Tribal Beneficiaries):

          (1)     the Turtle Mountain Band;

          (2)     the Chippewa Cree Tribe;

(3)     the Minnesota Chippewa Tribe;[2]

(4)     the Little Shell Tribe; and

(5)     a Non-Member Lineal Descendants' group;

b.      The Act required that the five PJF Beneficiaries' shares of the 1980 Award be based on the number of each Beneficiary's individual members who were determined by Interior, pursuant to the Act and its implementing regulations, to be eligible to share in Interior's distribution of the 1980 Award;

c.      In accordance with the Indian Tribal Judgment Funds Use or Distribution Act of 1973, 25 U.S.C. §§1401-1408 ("Use or Distribution Act"), the Act directed that Interior distribute, in the form of per capita payments, eighty percent (80%) of the shares of the four Tribal Beneficiaries of the 1980 Award to the individual members of each Tribal Beneficiary who were determined by Interior, pursuant to the Act and its implementing regulations, to be eligible to share in the distribution of the 1980 Award;

d.      In accordance with the Use or Distribution Act, the Act directed that principals of twenty percent (20%) of the four Tribal Beneficiaries' shares of the 1980 Award remain or provisionally[3] remain held in trust by Defendants for each of the Tribal Beneficiaries,

---

[2] The 1982 Distribution Act provided that the "White Earth Reservation Business Committee is authorized to use the interest and investment income accrued on the twenty-percent tribal share allocated to the Minnesota Chippewa." Pub. L. No. 97-403, § 5(2). This provision is consistent with the ICC finding that, within the Minnesota Chippewa Tribe, the White Earth Band is the proper beneficiary of the PJF 1980 Award allocation to the Minnesota Chippewa Tribe. *See, e.g.*, 23 Indian Cl. Comm'n 315, 327 (June 30, 1970).

[3] At the time of the 1982 Distribution Act, the Little Shell Tribe was not federally recognized, but the Act provided for the Tribe's share to vest with the Tribe upon recognition which has now occurred. *See* Pub L. No. 97-403 § 6(2).

and that earnings on the twenty-percent principals be available to the Tribal Beneficiaries for use for tribal programs approved by Interior; and

     e.    The Act provided that one hundred percent (100%) of the NMLD group's share of the 1980 Award be distributed by Interior as per capita payments to the NMLD group's individual members who were determined by Interior, pursuant to the Act and its implementing regulations, to be eligible to share in the distribution of the 1980 Award.

8.    <u>The 1982 Distribution Act Regulations.</u> "The 1982 Distribution Act Regulations" shall mean the final regulations that were issued by the Interior Department under the 1982 Distribution Act on November 8, 1985, as published at 50 Fed. Reg. 46, 427, and that directed and governed Interior's preparation of a roll of the individuals whom Interior determined, based on the 1982 Distribution Act, to be eligible to share in Interior's distribution of the 1980 Award. Pursuant to the 1980 Distribution Act Regulations, Interior determined that 33,584 individuals were eligible to share in the distribution of the 1980 Award, approximately twenty-eight percent (28%) of whom were the same individuals who were determined by Interior to share in the distribution of the 1964 Award.

9.    <u>CFC.</u> "CFC" shall mean the United States Court of Federal Claims.

10.    <u>CFC ADR Judge.</u> "The CFC ADR Judge" is the judge in the Alternative Dispute Resolution ("ADR") program of the CFC who is assigned to mediate the claims of the Individual Plaintiffs and the Tribal Plaintiffs in the CFC Companion Case. The CFC ADR Judge is currently Senior Judge Eric G. Bruggink.

11.    <u>CFC Companion Case.</u> "CFC Companion Case" shall mean the case entitled *Chippewa Cree Tribe of the Rocky Boy's Reservation, et al. v. United States*, No. 92-675L (Fed.

- 20 -

Cl.), which was lodged in the CFC on September 30, 1992.

12.     Chippewa Cree Tribe. "Chippewa Cree Tribe" shall mean the federally recognized Chippewa Cree Indians of the Rocky Boy's Reservation, Montana (also known as the Chippewa-Cree Indians of the Rocky Boy's Reservation, Montana), as set forth in 83 Fed. Reg. 4235 (Jan. 30, 2018).

13.     Claim Filing Deadline. "Claim Filing Deadline" shall mean the 90th day after Final Approval.

14.     Claim Form. "Claim Form" shall mean the standardized written form prepared by the Settlement Administrator for use by Legal Representatives and Eligible Heirs in their applications for Settlement Distribution payments.

15.     Class Action. "Class Action" shall mean this Class Action.

16.     Class Action Settlement Agreement. "Class Action Settlement Agreement" shall mean this Class Action Settlement Agreement.

17.     Class Counsel. "Class Counsel" shall mean the Native American Rights Fund (NARF), headquartered at 1506 Broadway, Boulder, Colorado 80302, and it shall include and not be limited to Melody L. McCoy and Kim Jerome Gottschalk, the NARF staff attorneys serving as lead counsel as of the date of this Class Action Settlement Agreement.

18.     Class Counsel Fees, Expenses, and Costs. "Class Counsel Fees, Expenses, and Costs" shall mean the monetary sum that is proposed in this Class Action Settlement Agreement and approved by this Court to compensate Class Counsel for attorneys' fees, expenses, and costs incurred in this Class Action and the CFC Companion Case.

19.     Class Representative. "Class Representative" shall mean a Named Individual

- 21 -

Plaintiff who has been proposed by the Individual Plaintiffs and approved by this Court for such service.

20. <u>Class Representative Service Award</u>. "Class Representative Service Award" shall mean the monetary sum that is proposed in this Class Action Settlement Agreement and approved by this Court to compensate an Individual Plaintiff for services rendered as a Class Representative in this Class Action and in the CFC Companion Case, which services are deemed by the Individual Plaintiffs and the Tribal Plaintiffs to be essential to the litigation and negotiation of settlement of the claims in this Class Action and the CFC Companion Case and which services may include but are not limited to the following: organizing teleconferences and in-person meetings; participating in teleconferences; traveling to and from and attending in-person meetings; collecting information for Class Counsel and their consultants; reviewing documents and data; communicating with Class Counsel, their consultants, and the Tribal Plaintiffs; advising Class Counsel and their consultants; and participating in formal and informal settlement negotiations by the CFC ADR Judge. Certain Class Representatives have provided some or all of the foregoing services at least since 2007.

21. <u>Complaint</u>. "Complaint" shall mean the class action complaint lodged in this Class Action.

22. <u>Court</u>. "Court" shall mean the United States District Court in which this Class Action is pending.

23. <u>Day</u>. "Day" shall mean a calendar day, regardless of whether it is a week day, a weekend day, a legal holiday, or a government shutdown day.

24. <u>Deceased</u>. "Deceased" shall mean no longer living during the Settlement Distribution Period.

25.     Defendants. "Defendants" shall mean Scott de la Vega, in his official capacity as Acting Secretary of the Interior; Andrew Baukol, in his official capacity as Acting Secretary of the Treasury; the Interior Department; the Treasury Department; and the United States.

26.     Defendants' Counsel. "Defendants' Counsel" shall mean the United States Department of Justice ("DOJ") attorney(s) who is/are representing Defendants in this Class Action and the United States in the CFC Companion Case. Defendants' Counsel are currently Prerak Shah, Deputy Assistant Attorney General, and Anthony P. Hoang, of the Environment and Natural Resources Division of DOJ.

27.     Eligible Heirs. "Eligible Heirs" shall mean, in instances of Deceased Original Individual Beneficiaries for whom there is no known Legal Representative, those Settlement Class Members who are First-Line Heirs or Second-Line Heirs.

28.     Escrow Account. "Escrow Account" shall mean the non-interest-bearing account in a private bank or other third-party financial institution, which is designated by the Named Individual Plaintiffs and approved and supervised by this Court and into which Defendants shall pay or cause to be paid the Settlement Proceeds.

29.     Escrow Agent. "Escrow Agent" shall mean the private person or entity who is designated by the Named Individual Plaintiffs and approved and supervised by this Court to administer the Escrow Account during the time that Settlement Proceeds are in the Escrow Account.

30.     Estate. "Estate" shall mean the totality of assets, properties, and liabilities that belongs to a Deceased Settlement Class Member at the time of his or her death and that is overseen by a Legal Representative, as such totality is defined under applicable federal, state, or tribal law

or action.

31.   Exclusion.   "Exclusion" (also known as "Opt-out") shall mean a voluntary exclusion from the Settlement Class under Fed. R. Civ. P. 23(c)(2)(B) that is approved by the Court.

32.   Fairness Hearing.   "Fairness Hearing" shall mean the hearing that is conducted by this Court under Fed. R. Civ. P. 23(e), after Preliminary Approval and before Final Approval.

33.   Final Approval.   "Final Approval" shall mean this Court's determination, if any, under Fed. R. Civ. P. 23(e), by order or judgment entered after the Fairness Hearing and made "final," that this Class Action Settlement Agreement is fair, adequate, reasonable, and binding. For purposes of Final Approval, "final" shall mean the later of the following:

a.   The time for rehearing or reconsideration, appellate review, and review by petition for certiorari has expired, and no motion for rehearing or reconsideration and/or notice of appeal or petition for certiorari has been lodged; or

b.   If rehearing, reconsideration, or appellate review, or review by petition for certiorari is sought, after any and all avenues, of rehearing, reconsideration, appellate review, or review by petition for certiorari have been exhausted, and no further rehearing, reconsideration, appellate review, or review by petition for certiorari is permitted, or the time for seeking such review has expired.

34.   First-Line Heir.   "First-Line Heir" shall mean, in the absence of applicable federal, state, or tribal law to the contrary, the living spouse, if any, of a Deceased Original Individual Beneficiary, and if there is no living spouse, the oldest living child of the Deceased Original Individual Beneficiary.

35. <u>Group Representatives</u>. "Group Representatives" shall mean the Named Individual Plaintiffs who have been proposed by the Individual Plaintiffs and approved by this Court to represent an identifiable group of Plaintiffs in the CFC Companion Case. Group Representatives are also Named Representatives.

36. <u>Individual Plaintiffs</u>. "Individual Plaintiffs" shall mean the Named Individual Plaintiffs and other Settlement Class Members in this Class Action. Individual Plaintiffs do not include the Tribal Plaintiffs in the CFC Companion Case.

37. <u>Interior or Interior Defendants</u>. "Interior" or "Interior Defendants" shall mean Scott de la Vega, in his official capacity as Acting Secretary of the Interior, as well as his successor(s) in office, and the United States Department of the Interior.

38. <u>Legal Representative of a Settlement Class Member</u>. "Legal Representative of a Settlement Class Member" shall mean a person or entity who is selected by the Settlement Class Member or who is appointed, retained, or approved under applicable federal, state, or tribal law to represent the Settlement Class Member, for purposes of any matters relating to this Class Action.

39. <u>Little Shell Tribe</u>. "Little Shell Tribe" shall mean the federally recognized Little Shell Band of the Chippewa Indians of Montana (also known as the Little Shell Tribe of Chippewa Indians of Montana), as set forth in Pub. L. No. 116-92, 133 Stat. 1198 (2019).

40. <u>Long-Form Notice</u>. "Long-Form Notice" shall mean the document that, at a minimum, meets the requirements of Fed. R. Civ. P. 23(c)(2)(B) for providing notice of this Class Action to the Settlement Class and that is approved by this Court for such purpose.

41. <u>Named Individual Plaintiff</u>. "Named Individual Plaintiff" shall mean an individual named as a plaintiff in this Class Action.

- 25 -

42.     Named Representatives.  "Named Representatives" shall mean the Individual Plaintiffs who have been proposed by the Individual Plaintiffs and approved by this Court to represent the individuals within the identifiable group of Plaintiffs in the CFC Companion Case. Named Representatives are also Group Representatives.

43.     Non-Member Lineal Descendants.  "Non-Member Lineal Descendants" or "NMLDs" shall mean

a.      The individuals who were determined by Interior, pursuant to the 1971 Distribution Act and the 1971 Distribution Act Regulations, to be lineal descendants of the Pembina Band who were eligible to share in the 1964 Award Distribution but who were not members of any of the 1964 Award Tribal Beneficiaries; and

b.      The individuals who were determined by Interior, pursuant to the 1982 Distribution Act and the 1982 Distribution Act Regulations, to be lineal descendants of the Pembina Band who were eligible to share in the 1980 Award Distribution but who were not members of any of the 1980 Award Tribal Beneficiaries.

44.     Opt-out.  "Opt-out" (also known as "Exclusion") shall mean a voluntary exclusion from the Settlement Class under Fed. R. Civ. P. 23(c)(2)(B) that is approved by the Court.

45.     Original Individual Beneficiaries.  "Original Individual Beneficiaries" shall mean the following:

a.      The 21,268 individuals who were determined by Interior, pursuant to the 1971 Distribution Act and the 1971 Distribution Act Regulations, to be eligible to share in the distribution by Interior of the 1964 Award, regardless of whether some or all of these individuals were also determined by Interior to be eligible to share in the distribution of the 1980 Award; and

- 26 -

     b.    The 33,584 individuals who were determined by Interior, pursuant to the 1982 Distribution Act and the 1982 Distribution Act Regulations, to be eligible to share in the distribution by Interior of the 1980 Award, regardless of whether some or all of these individuals were also determined by Interior to be eligible to share in the distribution of the 1964 Award.

    46.   <u>Parties</u>. "Parties" shall mean, collectively, the Individual Plaintiffs and Defendants in this Class Action.

    47.   <u>Parties' Counsel</u>. "Parties' Counsel" shall mean, collectively, Class Counsel and Defendants' Counsel.

    48.   <u>Pembina Band of Chippewa Indians</u>. "Pembina Band of Chippewa Indians" shall mean the Pembina Bands of Chippewa Indians that entered into the Treaty of October 2, 1863 with the United States, 13 Stat. 667; the Pembina Band of Chippewa Indians which was the petitioner in ICC Docket Numbers 18-A, 113 and 191, and to which the ICC made a final judgment award for these Docket Numbers on April 24, 1964; the Pembina Band of Chippewa Indians for which Congress appropriated funds to satisfy the ICC judgment by the Act of June 9, 1964, 78 Stat. 204, 213; the Pembina Band of Chippewa Indians for which Congress provided for the distribution of such funds, through Pub. L. No. 92-59, 85 Stat. 158 (1971); the Pembina Chippewa Indians that entered into the McCumber Agreement of October 22, 1892, with the United States, which Agreement was amended and approved by Congress under the Lieu Lands Act of April 21, 1904, April 21, 1904, 33 Stat. 189, 193, and by the Pembina Chippewas on February 15, 1905, *see* S. Rep. No. 97-655 (1982); the Pembina Chippewa Indians, also known as the Chippewa plaintiffs, who were the petitioners in ICC Docket Numbers 113, 191, 221 and 246, to whom the United States Court of Claims made a judgment award for these ICC Docket Numbers on March 18, 1980,

see *Turtle Mountain Band of Chippewa Indians v. United States,* 229 Ct. Cl. 872 (Ct. Cl. 1980); and the Pembina Chippewa Indians for whom Congress provided for the use and distribution of the awarded funds by Pub. L. No. 97-403, 96 Stat. 2022 (1982).

49.     Pembina Judgment Fund.  "Pembina Judgment Fund" or "PJF" shall mean any and all monies that Congress appropriated to satisfy the 1964 Award or the 1980 Award and that were held in trust by the United States, the Interior Department, the Treasury Department, or any other federal agency, pending distribution to the PJF Beneficiaries.

50.     Pembina Judgment Fund Beneficiaries.  "Pembina Judgment Fund Beneficiaries" or "PJF Beneficiaries" shall mean both the tribal and individual beneficiaries of the Pembina Judgment Fund as determined by the ICC to share in the 1964 Award or the 1980 Award, and as defined by Congress in the 1971 Distribution Act or the 1982 Distribution Act.

51.     Preliminary Approval.  "Preliminary Approval" shall mean any order entered by this Court before Final Approval that initially approves the provisions of this Class Action Settlement Agreement regarding the contents of Long-Form Notice and Summary Notice, the manner and timing of providing Long-Form Notice and Summary Notice, the time period and the requirements for Exclusion / Opt-out, the time period and requirements for Objections to the Class Action Settlement Agreement, and the proposed date, time and location for the Fairness Hearing.

52.     Probate.  "Probate" shall mean the process by which an Estate and the distribution of any assets in the Estate are settled under applicable federal, state, or tribal law or action.

53.     Proof of Death.  "Proof of Death" shall mean governmental documentation (*e.g.*, a death certificate, an affidavit or a letter that is issued by an applicable federal, state, local, or tribal governmental authority) or non-governmental documentation (*e.g.*, a certificate of death signed by

a licensed medical provider or a licensed funeral director) that provides evidence of death.

54.     Proof of Heirship. "Proof of Heirship" shall mean governmental documentation (*e.g.*, a will, a probate document, or an affidavit of heirship that is issued by an applicable federal, state, local, or tribal authority) or non-governmental documentation (*e.g.*, an affidavit of heirship signed by a licensed attorney) that provides evidence of a right to heirship.

55.     Proof of Identity. "Proof of Identity" shall mean governmental documentation (*e.g.*, a valid driver's license, passport, identification card, social security card, birth certificate or letter of verification) that is issued by the applicable federal, state, local, or tribal authority and that bears information adequately identifying the bearer.

56.     Putative Settlement Class Member. "Putative Settlement Class Member" shall mean an Individual Plaintiff who is a member of the Settlement Class before the Court has certified the Settlement Class.

57.     Qualified Settlement Fund. "Qualified Settlement Fund" shall mean the non-interest-bearing fund or account that is established, at Class Counsel's direction, by the Settlement Administrator in a bank or other financial institution, that is approved by the Court in this Class Action, and that meets the definition and requirements of the Internal Revenue Service for such funds or accounts under 26 C.F.R. § 1.468B-1.

58.     Second-Line Heir. "Second-Line Heir" shall mean, in those instances in which there are no First-Line Heirs, a next closest living heir to a Deceased Original Individual Beneficiary, as determined in accordance with applicable federal, state, or tribal law and as designated by the Settlement Administrator.

59.     Settlement Administration Information Telephone Line. "Settlement

- 29 -

Administration Information Telephone Line" shall mean the toll-free telephone line (1-833-999-9915) that the Settlement Administrator has established and shall maintain and monitor for the purposes of providing general information about contacts and dates regarding this Class Action Settlement Agreement, that has no live operator; that has an automated menu of options; and that has the capability of recording voice-mail messages that Putative Settlement Class Members and Settlement Class Members may leave regarding this Class Action Settlement Agreement (including voice-mail messages about name and address changes, requests for Long Form Notice and/or Claim Forms, and needs for assistance with Settlement Distribution).

60.     Settlement Administration Information Website.  "Settlement Administration Information Website" shall mean the internet website (www.PembinaSettlement.com) that the Settlement Administrator has established and shall maintain and monitor for the purposes of providing general information about contacts and dates regarding this Class Action Settlement Agreement and that has the capability of receiving any emails that Putative Settlement Class Members and Settlement Class Members may send, including emails about name and address changes, requests for Long Form Notice and/or Claim Forms, and needs for assistance with Settlement Distribution.

61.     Settlement Administrator.  "Settlement Administrator" shall mean Class Experts Group, LLC, or any other person or entity who is approved by this Court to provide administrative services relating to this Class Action Settlement Agreement, including communicating with Class Counsel, providing Notice to the Settlement Class, administering the Settlement Distribution, preparing and submitting to the Internal Revenue Service of the Treasury Department—as well as the Court, Class Counsel, and Defendants' Counsel, upon request or need—any required reports

relating to the Qualified Settlement Fund, and complying with any tax payment duties relating to the Qualified Settlement Fund.

62.     Settlement Administrator Fees, Expenses, and Costs.  "Settlement Administrator Fees, Expenses, and Costs" shall mean the monetary sum that is proposed in this Class Action Settlement Agreement and approved by this Court to compensate the Settlement Administrator for fees, expenses, and costs incurred in implementing this Class Action Settlement Agreement and the Tribal Plaintiffs' Settlement Agreement.

63.     Settlement Class.  "Settlement Class" shall mean, subject to the approval of and certification by this Court pursuant to Fed. R. Civ. P. 23(b)(3),

        a.     all Original Individual Beneficiaries;

        b.     all Legal Representatives of Settlement Class Members;

        c.     all First-Line Heirs; and

        d.     all Second-Line Heirs.

64.     Settlement Class Members.  "Settlement Class Members" shall mean all those Individual Plaintiffs in the Settlement Class who are not Exclusions or Opt-outs.

65.     Settlement Distribution.  "Settlement Distribution" shall mean the process that is carried out by the Settlement Administrator and that is supervised by this Court to distribute the Settlement Proceeds to the Settlement Class Members.

66.     Settlement Distribution Period.  "Settlement Distribution Period" shall mean the period in which the Settlement Administrator carries out the Settlement Distribution, which shall begin after Defendants' payment of the Settlement Proceeds and which shall conclude on or before the 370th Day after Defendants' payment.

67.  Settlement Proceeds.  "Settlement Proceeds" shall mean the consideration in the amount of Fifty-Nine Million Dollars ($59,000,000.00) that, as soon after Final Approval of this Class Action Settlement Agreement and after the full execution of the Tribal Plaintiffs' Settlement Agreement as reasonably possible, Defendants pay or cause to be paid—less any applicable Treasury Offset or Levy—by a single deposit (through electronic fund transfer) into the Escrow Account for transfer by the Settlement Class Members and the Tribal Plaintiffs to the Qualified Settlement Fund for Settlement Distribution.  Settlement Class Members in this Class Action and Tribal Plaintiffs in the CFC Companion Case shall direct the Settlement Administrator to use the Settlement Proceeds to make payments (a) to the Settlement Class Members in this Class Action; (b) to the Tribal Plaintiffs in the CFC Companion Case; (c) for Class Representative Service Awards; (d) for Class Counsel Fees, Expenses, and Costs; and (e) for Settlement Administrator Fees, Expenses, and Costs.  Settlement Proceeds are not trust funds and thus shall not be deposited or transferred into any accounts held in trust by Defendants.

68.  Summary Notice.  "Summary Notice" shall mean the document that summarizes the terms and conditions in the Long-Form Notice and that is approved by the Court.

69.  Treasury or Treasury Defendants.  "Treasury" or "Treasury Defendants" shall mean Andrew Baukol, in his official capacity as Acting Secretary of the Treasury, as well as his successors in office, and the United States Department of the Treasury.

70.  Treasury Offset or Levy.  "Treasury Offset or Levy" shall mean the sum of money, if any, that the United States Department of the Treasury may be required to deduct under federal law, including 31 U.S.C. § 3716 and 26 U.S.C. § 6331, for the purpose of collecting delinquent debts, if any, to the United States.

- 32 -

71.     Tribal Beneficiaries.  "Tribal Beneficiaries" shall mean the Chippewa Cree Tribe, the Turtle Mountain Band, the Little Shell Tribe, and the White Earth Band.  "Tribal Beneficiaries" are also Tribal Plaintiffs in the CFC Companion Case.

72.     Tribal Law or Action.  "Tribal Law or Action" shall mean a valid official law of, or valid action taken pursuant to a valid official law or regulation by, a valid governing body, branch of government, or agency of a Tribal Plaintiff.

73.     Tribal Plaintiffs.  "Tribal Plaintiffs" shall mean the Chippewa Cree Tribe, the Turtle Mountain Band, the Little Shell Tribe, and the White Earth Band, who are plaintiffs in the CFC Companion Case.  Tribal Plaintiffs are also Tribal Beneficiaries.

74.     Tribal Plaintiffs' Settlement Agreement.  "Tribal Plaintiffs' Settlement Agreement" shall mean the Settlement Agreement that is executed by the Tribal Plaintiffs and the United States in the CFC Companion Case.

75.     Turtle Mountain Band.  "Turtle Mountain Band" shall mean the federally recognized Turtle Mountain Band of Chippewa Indians of North Dakota, as set forth in 83 Fed. Reg. 4235 (Jan. 30, 2018).

76.     Undistributed Settlement Proceeds.  "Undistributed Settlement Proceeds" shall mean any Settlement Proceeds that remain in the Qualified Settlement Fund at the conclusion of the Settlement Distribution Period.

77.     White Earth Band.  "White Earth Band" shall mean the federally recognized White Earth Band of the Minnesota Chippewa Tribe, Minnesota (also known as the White Earth Nation), as set forth in 83 Fed. Reg. 4235 (Jan. 30, 2018).

**B.     CONFIDENTIALITY**

As soon as practicable after filing the Complaint, Named Individual Plaintiffs and Defendants shall submit joint stipulations and proposed orders protecting the confidentiality of

1.     Certain documents and data provided by Defendants to Named Individual Plaintiffs in this Class Action; and

2.     The Parties' settlement discussions and materials that pertain to this Class Action Settlement Agreement and that already are subject to existing orders in the CFC Companion Case protecting (a) the confidentiality of certain documents and data provided by the United States to Individual Plaintiffs and Tribal Plaintiffs, and (b) the confidentiality of the Parties' settlement discussions and materials. *See Chippewa Cree*, No. 92-675, ECF Nos. 38, 186, 294, and 441.

**C.     SETTLEMENT CLASS CERTIFICATION**

At the same time as or as soon as practicable after the filing of the Complaint, Named Individual Plaintiffs shall seek certification by this Court under Fed. R. Civ. P. 23(b)(3) of the Settlement Class that is limited to the purposes of obtaining Preliminary Approval and Final Approval and implementing this Class Action Settlement Agreement.

**D.     PRELIMINARY APPROVAL**

At the same time as or as soon as practicable after the filing of the Complaint, Named Individual Plaintiffs shall seek Preliminary Approval.

**E.     NOTICE**

1.     <u>Provision and Timing of Notice to Settlement Class</u>.

a.     Within 30 days after Preliminary Approval, the Settlement Administrator shall

- 34 -

(1)     Mail the Long-Form Notice to the Settlement Class, and

(2)     Activate or initiate the Settlement Administration Information Telephone Line and the Settlement Administration Information Website.

b.     Within 15 days after mailing the Long-Form Notice, the Settlement Administrator shall begin publication and posting of the Summary Notice.

2.     Long-Form Notice by Direct Mail.

a.     The Settlement Administrator shall use reasonable efforts, in accordance with Fed. R. Civ. P. 23(c)(2), to provide the Long-Form Notice by direct mail to the following Putative Settlement Class Members and Settlement Class Members whose names and addresses are reasonably ascertainable:

(1)     Original Individual Beneficiaries;

(2)     Known Legal Representatives of Settlement Class Members; and

(3)     In the absence of known Legal Representatives of Deceased Settlement Class Members, the First-Line Heirs.

b.     The Settlement Administrator shall be required to provide the Long-Form Notice by direct mail only to those Second-Line Heirs who specifically request the provision of such Notice, either by leaving a voice-mail message on the Settlement Administration Information Telephone Line that includes a valid mailing address, or by sending an email through the Settlement Administration Information Website that includes a valid mailing address.  The Settlement Administrator may provide the Long Form Notice to Second-Line Heirs in other instances, if the Settlement Administrator or Class Counsel deems such provision to be necessary or desirable.

- 35 -

c.    The Settlement Administrator shall work with Class Counsel to develop methodologies to deal with any addressed and mailed Long-Form Notices that are returned as undeliverable.

3.    <u>Summary Notice Publication and Posting.</u>  Named Individual Plaintiffs and the Settlement Administrator shall use reasonable efforts, in accordance with Fed. R. Civ. P. 23(c)(2) and as directed by Class Counsel, to publish Summary Notice in mainstream and American Indian media outlets.  Additionally, Named Individual Plaintiffs and the Settlement Administrator shall provide information about the Summary Notice on the Settlement Administration Information Telephone Line and post the Summary Notice on the Settlement Administration Information Website.

4.    <u>Other Notice.</u>  Named Individual Plaintiffs and the Settlement Administrator shall issue and publish information about this Class Action Settlement Agreement, through earned media efforts and in press releases to media outlets, including tribal and local periodicals or newsletters.

## F.    SETTLEMENT CLASS EXCLUSION / OPT-OUT

1.    <u>Exclusion / Opt-out Effects.</u>  Those Individual Plaintiffs in the Settlement Class who choose to be Exclusions or Opt-outs shall not share in any of the Settlement Proceeds that result from this Class Action Settlement Agreement.  Individual Plaintiffs in the Settlement Class who are considering whether to be Exclusions or Opt-out may consult with attorneys other than Class Counsel about the advantages and disadvantages of Exclusion / Opt-out before making their choice.

2.   Exclusion / Opt-out Deadline. Those Individual Plaintiffs in the Settlement Class who wish to be Exclusions or Opt-outs or who are considering whether to be Exclusions or Opt-outs have to make their determinations before the 45th day after the postmarked mailing of the Long-Form Notice by the Settlement Administrator.

3.   Exclusion / Opt-out Requirements.

    a.   All Exclusion / Opt-out requests must be

        (1)   Postmarked by or before the Exclusion / Opt-out Deadline; and

        (2)   Mailed directly to the Settlement Administrator at the following address:

> Class Experts Group, LLC
> P.O. Box 995
> Mequon, WI 53092

    b.   Exclusion / Opt-out requests by any Settlement Class Member who is an Original Individual Beneficiary have to include

        (1)   The Settlement Class Member / Original Individual Beneficiary's name, address, and date of birth; and

        (2)   A statement of intent to be an Exclusion / Opt-out.

    c.   Exclusion / Opt-out requests by any Legal Representative of a Settlement Class Member have to include

        (1)   The Settlement Class Member's name, address, and date of birth;

        (2)   The Legal Representative's name, address, and date of birth;

        (3)   Proof of Identity of the Legal Representative

        (4)   Proof of Death of the Settlement Class Member, if applicable;

(5)     The appropriate will, Estate, Probate, appointment, retention, or approval documentation of the Legal Representative status; and

(6)     A statement of intent to be an Exclusion / Opt-out.

d.     Exclusion / Opt-out requests by First-Line Heirs and Second-Line Heirs have to include

(1)     The Original Individual Beneficiary's name, address, and date of birth;

(2)     The First-Line Heir's or Second-Line Heir's name, address, and date of birth;

(3)     Proof of Death of the Original Individual Beneficiary;

(4)     Proof of Identity of the Eligible Heir

(5)     Proof of Heirship for the First-Line Heir or Second-Line Heir; and

(6)     A statement of intent to be an Exclusion / Opt-out.

e.     Class Counsel and the Settlement Administrator reserve the right to verify the submitted information meets the Exclusion / Opt-out Requirements.

4.     <u>Failure to Meet Exclusion / Opt-out Requirements</u>.  Failure to meet Exclusion / Opt-out Requirements shall invalidate the Exclusion / Opt-out request.  Within 21 days after the Exclusion / Opt-out Deadline, the Settlement Administrator shall provide written notice to any Settlement Class Members with invalidated Exclusion / Opt-out requests that their Exclusion / Opt-out requests are invalid and that they remain Settlement Class Members.

5.     <u>Exclusion / Opt-out Retractions</u>.

a. Named Individual Plaintiffs and Class Counsel shall have a reasonable opportunity to contact Settlement Class Members who have requested to be Exclusions or Opt-outs. Further, Settlement Class Members who have requested to be Exclusions or Opt-outs shall have a reasonable opportunity to retract their Exclusion / Opt-out requests before the final determination of Minimum Settlement Class Participation and before the Fairness Hearing.

b. Settlement Class Members who wish to retract their Exclusion / Opt-out requests must mail their written retractions directly to the Settlement Administrator at the following address:

> Class Experts Group, LLC
> P.O. Box 995
> Mequon, WI 53092

c. All Exclusion / Opt-out request retractions must be postmarked by no later than seven days before the Fairness Hearing.

6. Exclusion / Opt-out List. The Settlement Administrator shall establish, maintain, and update daily a list of Exclusion / Opt-out requests and retractions received by mail and processed. The Exclusion / Opt-out List shall include all Exclusion / Opt-out requests and retractions, as well as the names, addresses and telephone information, if available, from the Exclusion / Opt-out requests and retractions received by mail. Further, the Exclusion / Opt-out List shall indicate the requests that meet, and the ones that do not meet, the Exclusion / Opt-out Requirements. The Settlement Administrator shall provide the most up-to-date copy of the Exclusion / Opt-out List to Class Counsel on a daily basis, and to Defendants' Counsel upon request. Seven days before the Fairness Hearing, the Settlement Administrator shall compile a

final list of all valid Exclusion / Opt-out requests and retractions and provide that list to the Parties'

Counsel and the Court.

## G. MINIMUM SETTLEMENT CLASS MEMBER PARTICIPATION REQUIREMENT

If, after the conclusion of the Exclusion / Opt-out Retraction process and no later than five

days before the Fairness Hearing, the number of Settlement Class Members who are Exclusions

or Opt-outs exceeds 3,900 individuals, Defendants may elect to declare this Class Action

Settlement Agreement, as well as the Tribal Plaintiffs' Settlement Agreement, null and void.

## H. OBJECTIONS AFTER NOTICE AND BEFORE FAIRNESS HEARING

1.   Objections.  In accordance with Fed. R. Civ. P. 23(e)(5), any Settlement Class

Member who wishes to object to the terms and conditions of this Class Action Settlement

Agreement may do so.

2.   Objection Deadline.  Settlement Class Members who wish to object to the terms

and conditions of this Class Action Settlement Agreement have to do so on or before the 45th day

after the postmarked date of the Long-Form Notice mailed by the Settlement Administrator.

3.   Other Objection Requirements.  Settlement Class Members who wish to object to

the terms and conditions of this Class Action Settlement Agreement have to state their objections

in writing and send the objections directly to the Settlement Administrator in a timely manner.

a.   All objections by Original Individual Beneficiaries shall include

(1)   The Original Individual Beneficiary's name, address, date of birth,

and Social Security Number, if any;

- 40 -

(2)     The specific term(s) or condition(s) of this Class Action Settlement Agreement to which the Original Individual Beneficiary objects; and

(3)     A statement about whether the objecting Original Individual Beneficiary intends to appear at the Fairness Hearing.

b.     All objections by Legal Representatives of Settlement Class Members shall include

(1)     The Settlement Class Member's name, address, date of birth, and Social Security Number;

(2)     The name, address, date of birth, and Social Security Number or Taxpayer Identification Number, if any, of the Legal Representative, as well as a copy of the appropriate will, Estate, Probate, appointment, retention, or approval documentation of the Legal Representative's status;

(3)     Proof of Identity of the Legal Representative

(4)     Proof of Death of the Settlement Class Member, if applicable;

(5)     The specific term(s) or condition(s) of this Class Action Settlement Agreement to which the Legal Representative objects; and

(6)     A statement about whether the objecting Legal Representative intends to appear at the Fairness Hearing.

c.     All objections by First-Line Heirs and Second-Line Heirs shall include

(1)     The Original Individual Beneficiary's name, address, date of birth, and Social Security Number, if any;

- 41 -

(2)     The First-Line Heir's or Second-Line Heir's name, address, date of birth, and Social Security Number, if any;

(3)     Proof of Death of the Original Individual Beneficiary;

(4)     Proof of Identity of the Eligible Heir;

(5)     Proof of Heirship for the First-Line Heir or the Second-Line Heir;

(6)     The specific term(s) or condition(s) of this Class Action Settlement Agreement to which the First-Line Heir or Second-Line Heir objects; and

(7)     A statement about whether the objecting First-Line Heir or Second-Line Heir intends to appear at the Fairness Hearing.

d.     Class Counsel and the Settlement Administrator shall have the right to verify that the submitted information meets the Objection Requirements.

e.     Settlement Class Members who have properly and timely submitted objections to the Settlement Administrator may appear at the Fairness Hearing may do so on a *pro se* basis or with or through legal counsel employed at their own expense.

4.     <u>Compilation of Objections</u>.  The Settlement Administrator shall compile, on a weekly basis, the Objections that are received.  The weekly compilation shall include all of the Objections that are received in the preceding week, and it shall indicate those Objections that meet, and those Objections that do not meet, the Objection Requirements.  Settlement Administrator shall provide to the Parties' Counsel, on a weekly basis, the most up-to-date Objection compilation, as well as copies of the associated Objections received in the preceding week.  Fourteen days after the Objection Deadline and no later than seven days before the Fairness Hearing, the Settlement Administrator shall submit to the Parties' Counsel—as well as lodge with the Court, as required

herein, the final Objection compilation containing all Objections that have been received and that meet the Objection Requirements.

**I.    SETTLEMENT ADMINISTRATOR'S AFFIDAVIT OF NOTICE AND MAILING**

1.    Submission Deadline.  Seven days before the Fairness Hearing, the Settlement Administrator shall provide to the Parties' Counsel an Affidavit of Notice and Mailing.

2.    Affidavit Contents.  The Affidavit of Notice and Mailing shall provide details about whether, when, and how the Settlement Administrator accomplished the following:

   a.    The direct mailing of the Long-Form Notice;

   b.    The publication of the Summary Notice;

   c.    The Other Notice;

   d.    The final Exclusion / Opt-out List; and

   e.    The final Objection Compilation.

3.    Attachment to Motion for Final Approval.  Class Counsel shall attach the final Affidavit of Notice and Mailing to the Motion for Final Approval.

**J.    FAIRNESS HEARING AND FINAL APPROVAL**

1.    Fairness Hearing Date, Time, and Location.  This Court shall conduct a Fairness Hearing on or before the 120th day after Preliminary Approval, in accordance with Preliminary Approval and as stated in the Preliminary Approval.

2.    Motion for Final Approval.  At or before the Fairness Hearing, Settlement Class Members shall move for Final Approval.

3.    Right to Appear. All Settlement Class Members, regardless of whether they object to this Class Action Settlement Agreement, have a right to appear at the Fairness Hearing.

- 43 -

4. <u>Fairness Hearing Determinations</u>. At the Fairness Hearing, the Court shall determine whether the terms and conditions of this Class Action Settlement Agreement, including the following, are fair and reasonable:

        a.     The Settlement Proceeds;

        b.     The Settlement Proceeds Allocation and Distribution Formulas;

        c.     The Class Representative Service Awards;

        d.     The Class Counsel Fees, Expenses, and Costs; and

        e.     The Settlement Administrator Fees, Expenses, and Costs.

5. <u>No Opposition by Defendants</u>. At the Fairness Hearing, Defendants will not oppose Final Approval so long as Final Approval conforms, in all material ways, to the terms and conditions of this Class Action Settlement Agreement and of the Tribal Plaintiffs' Settlement Agreement.

6. <u>Binding Effect of Final Approval or Final Approval Without Material Changes</u>. Upon Final Approval or Final Approval Without Material Changes, all Settlement Class Members and Defendants shall be bound by all terms and conditions of this Class Action Settlement Agreement and by all proceedings, orders, and judgments entered in this Class Action.

7. <u>Effect of No Final Approval or Final Approval Without Material Changes.</u> If this Class Action Settlement Agreement does not receive Final Approval or if it receives Final Approval with material changes, either Party may void this Class Action Settlement Agreement, as well as the Tribal Plaintiffs' Settlement Agreement, upon written notification of such voiding to this Court and the other Party within 30 days (which period may be extended upon joint agreement of the Parties) after the later of the following:

- 44 -

a.    If no motion for rehearing or reconsideration and/or notice of appeal or a petition for certiorari is filed, then the expiration of the time for rehearing or reconsideration, appellate review, and review by petition for certiorari; or

b.    If a motion for rehearing or reconsideration and/or notice of appeal or a petition for certiorari is filed, then after any and all avenues of rehearing, reconsideration, appellate review, or review by petition for certiorari have been exhausted or after the time for seeking such review has expired.

8.    Precluded Use of this Class Action Settlement Agreement.  If this Class Action Settlement Agreement or the Tribal Plaintiffs' Settlement Agreement becomes null and void, nothing in this Class Action Settlement Agreement or the Tribal Plaintiffs' Settlement Agreement may be used by any Party for any purpose.  Further, nothing that is stated or produced by any Party in connection with this Class Action Settlement Agreement or the Tribal Plaintiffs' Settlement Agreement or with respect to any negotiations to settle this Class Action or the CFC Companion Case and that is protected by the Settlement Confidentiality Protective Order in this Class Action and the Settlement Confidentiality Protective Order in the CFC Companion Case (*Chippewa Cree*, No. 92-675, ECF Nos. 38, 186, 294, and 441) may be used by any Party for any purpose.  Additionally, both Parties retain all claims or defenses that they otherwise would have the right to pursue or assert.

9.    Restoration of Status Quo Ante.  If this Class Action Settlement Agreement or the Tribal Plaintiffs' Settlement Agreement becomes null and void, Named Individual Plaintiffs shall move unilaterally or the Parties shall move or stipulate jointly to dismiss this Class Action under Fed. R. Civ. P. 41, to vacate any order entered by this Court certifying the Settlement Class or

relating to any aspect of this Class Action Settlement Agreement, and to restore the Parties to the *status quo ante*. Further, the claims of Named Individual Plaintiffs in this Class Action and of Named Individual Plaintiffs and the Tribal Plaintiffs in the CFC Companion Case, as well as Defendants' defenses in this Class Action and the United States' defenses in the CFC Companion Case, shall be unaffected.

10. Start of Settlement Distribution. The Settlement Administrator shall not begin Settlement Distribution until after this Court has entered Final Approval and Defendants have paid the Settlement Proceeds.

## K. DEFENDANTS' PAYMENT OF SETTLEMENT PROCEEDS AND DISCHARGE

Defendants shall make or cause to be made a single payment of the Settlement Proceeds in full, complete, and final settlement of all claims in this Class Action and in the CFC Companion Case. Defendants' payment of the Settlement Proceeds shall fully discharge Defendants' obligations regarding the Settlement Proceeds to all Individual Plaintiffs under this Class Action Settlement Agreement and to all Tribal Plaintiffs under the Tribal Plaintiffs' Settlement Agreement.

## L. PRELIMINARY ALLOCATIONS OF SETTLEMENT PROCEEDS

Named Individual Plaintiffs and Tribal Plaintiffs have made the following preliminary allocations of the Settlement Proceeds, based on information available to Named Individual Plaintiffs, Tribal Plaintiffs, and Class Counsel as of the date of this Class Action Settlement Agreement.[4] All preliminary allocations are subject to modification at the time of Final Approval.

---

[4] Based on extensive multi-faceted research, considerable in-depth discussion, and

Defendants have no role, duty, responsibility, or liability—including, without limitation, no liability as fiduciary, trustee, or other similar status—whatsoever regarding the preliminary or final allocations of Settlement Proceeds.

1.      Allocation to Settlement Class Members. The total amount allocated for Settlement Class Members is Forty Million Nine Hundred and Eighty-Seven Thousand One Hundred and Twelve Dollars ($40,987,112.00). The specific components of the allocation are as follows:

a.      The total amount allocated for Settlement Class Members who shared in the 1964 Award is One Million Sixty-Three Thousand Four Hundred Dollars ($1,063,400.00).

b.      The total amount allocated for Settlement Class Members who shared in the 1980 Award as members of a Tribal Beneficiary is Thirty-Three Million Seven Hundred and Forty-Eight Thousand Nine Hundred and Ninety-Two Dollars ($33,748,992.00).

---

relevant expertise, the Named Individual Plaintiffs, Tribal Plaintiffs, and Class Counsel planned and developed the Settlement Distribution terms and conditions set forth in this Class Action Settlement Agreement to meet the requirements of Fed. R. Civ. P. 23 and to expedite the Settlement Distribution payments to Settlement Class Members, in a manner to best minimize the cost of Settlement Distribution and to best maximize the amount of payments to Settlement Class Members in this lengthy and complex Class Action. Over an almost 10-year period, Class Counsel conducted extensive research regarding settlement administration firms suitable for this Class Action, class action cases and settlements involving American Indian tribes and individuals and the United States government, and class actions generally. Class Counsel shared and discussed their research results with the Named Individual Plaintiffs, the Tribal Plaintiffs, Defendants, Defendants' Counsel, and the CFC ADR Judge, in multiple in-person meetings, status conferences, and negotiations sessions. In 2012, Class Counsel retained a leading experienced settlement administrator as a settlement expert. That settlement administration expert participated in the Parties' discussions, status conferences, and negotiating sessions, and she presented various proposals to the Named Individual Plaintiffs, the Tribal Plaintiffs, Defendants, Defendants' Counsel, and the CFC ADR Judge regarding potential settlement administration plans and costs for this Class Action.

c.    The total amount allocated for Settlement Class Members who shared in the 1980 Award as members of the NMLD group is Six Million One Hundred and Seventy-Four Thousand Seven Hundred and Twenty Dollars ($6,174,720.00).

2.    <u>Allocations to the Tribal Plaintiffs</u>.  The total amount allocated to the Tribal Plaintiffs is Eight Million Four Hundred Thirty-Seven Thousand Three Hundred and Seventy-Six Dollars ($8,437,376.00).  The specific components of the allocation are as follows:

a.    The total amount allocated to the Chippewa Cree Tribe is Nine Hundred Eighty-Seven Thousand Forty-Seven Dollars and Eleven Cents ($987,047.11);

b.    The total amount allocated to the Turtle Mountain Band is Six Million Five Hundred Eighty Thousand Seven Hundred and Twenty-Three Dollars and Thirty-Nine Cents ($6,580,723.39);

c.    The total amount allocated to the Little Shell Tribe is Five Hundred Forty-One Thousand Five Hundred and Fifty Dollars and Twenty-Seven Cents ($541,550.27); and

d.    The total amount allocated to the White Earth Band is Three Hundred Twenty-Eight Thousand Fifty-Five Dollars and Twenty-Three Cents ($328,055.23).

3.    <u>Class Representative Service Awards</u>.  The total amount allocated for Class Representative Service Awards is One Hundred and Seventy Thousand Dollars ($170,000.00).  As of the date of this Class Action Settlement Agreement, there are or have been a total of 85 Class Representatives, and each living Class Representative, or an Eligible Heir of a Deceased Class Representative, shall receive Two Thousand Dollars ($2,000.00).

4. <u>Class Counsel Fees, Expenses, and Costs</u>. The total amount allocated for Class Counsel Fees, Expenses, and Costs is Six Million Four Hundred and Five Thousand Five Hundred and Twelve Dollars ($6,405,512.00).

5. <u>Settlement Administrator Fees, Expenses, and Costs</u>. The total amount allocated for the Settlement Administrator's Fees, Expenses, and Costs for full performance of the Settlement Administrator's obligations under this Class Action Settlement Agreement is Three Million Dollars ($3,000,000.00). Class Counsel may, at their discretion, assign other duties to the Settlement Administrator that relate to but are additional to those set forth in this Class Action Settlement Agreement. Payment for any fees, expenses, and costs associated with any such additional duties shall not be drawn from the portions of the Settlement Proceeds that have been preliminarily or will be finally allocated for Payments to Settlement Class Members or for Payments to Tribal Plaintiffs.

## M.   SETTLEMENT DISTRIBUTION PROCESS AND PAYMENTS

1. <u>Transfer of Settlement Proceeds from Escrow Account to Qualified Settlement Fund</u>. On or before the fifth day after Defendants' payment of the Settlement Proceeds and in accordance with this Class Action Settlement Agreement, Class Counsel shall direct the Settlement Administrator to transfer the Settlement Proceeds from the Escrow Account into the Qualified Settlement Fund.

2. <u>Distribution of Allocated Settlement Proceeds</u>.

a. <u>Distribution to Living Original Individual Beneficiaries</u>. On or before the fifth day after the Settlement Administrator's transfer of the Settlement Proceeds to the Qualified Settlement Fund, and in accordance with this Class Action Settlement Agreement, the Settlement

Administrator shall transmit Settlement Distribution payments to the Settlement Class Members who are living Original Individual Beneficiaries and whose addresses have been confirmed during the Notice process. Living Original Individual Beneficiaries are not required to submit a Claim Form or any other documentation prior to such mailings.

        b.      <u>Payments to Tribal Plaintiffs, of Class Representatives Service Awards, and for Class Counsel Fees, Expenses, and Costs</u>. On or before the fifth day after the Settlement Administrator's transfer of the Settlement Proceeds to the Qualified Settlement Fund and in accordance with this Class Action Settlement Agreement and the Tribal Plaintiffs' Settlement Agreement, the Settlement Administrator shall make the requisite settlement payments

        (1)      To the Tribal Plaintiffs;

        (2)      Of Class Representatives Service Awards; and

        (3)      For Class Counsel Fees, Expenses, and Costs.

        c.      <u>Distributions to Legal Representatives of Settlement Class Members and Eligible Heirs: Process</u>.

        (1)      At the same time as or as soon as practicable after the mailing of Long-Form Notice, the Settlement Administrator shall mail Claim Forms to Legal Representatives of Settlement Class Members and Eligible Heirs at their last known addresses and shall post the Claim Form on the Settlement Administration Information Website. Also, the Settlement Administrator shall mail Claim Forms in response to requests for such forms that are made by voice-mail messages containing valid mailing addresses left on the Settlement Administration Information Telephone Line or by emails containing valid mailing addresses sent to the Settlement Administration Information Website.

(2)     Legal Representatives of Settlement Class Members and Eligible Heirs wishing to receive Settlement Distribution payments must complete and sign the Claim Forms, attach copies of all required supporting documents, and return the entire Claim Form package directly to the Settlement Administrator, postmarked by or before the Claims Filing Deadline. Legal Representatives of Settlement Class Members and Eligible Heirs with questions or requests for assistance regarding the Claim Forms may submit those questions or requests, as well as contact information, to the Settlement Administrator through the Settlement Administration Information Telephone Line and/or the Settlement Administration Information Website.

(3)     The Settlement Administrator shall process all received, timely postmarked Claim Forms and make administrative determinations about the completeness and validity of the claims.

(4)     If the Settlement Administrator determines that a Claim Form is complete and valid, the Settlement Administrator shall approve that claim for Settlement Distribution payment.

(5)     If the Settlement Administrator determines that a Claim Form is deficient, the Settlement Administrator shall inform the Legal Representative of a Settlement Class Member or the Eligible Heir of the deficiencies and give the Legal Representative of a Settlement Class Member or the Eligible Heir three opportunities to cure the deficiencies. In instances where a Legal Representative of a Settlement Class Member or an Eligible Heir fails to timely cure the deficiencies, the Settlement Administrator shall designate the claims as deficient and not cured.

(6)     If the Settlement Administrator cannot determine whether a claim by a Legal Representative of a Settlement Class Member or an Eligible Heir is valid or complete, the Settlement Administrator shall pass such claim to Class Counsel for review and determination.

(7)     If Class Counsel cannot determine the validity or completeness of a claim by a Legal Representative of a Settlement Class Member or an Eligible Heir, the Settlement Administrator shall include such claim, as well as any recommendations regarding disposition, in the Settlement Administrator's final report to this Court about the administrative claim determination process, so that the Court can review and determine the disposition of those claims.

d.      Settlement Distributions to One Legal Representative of Settlement Class Members and One Eligible Heir:  Payments.

(1)     On or before the 30th day and concluding no later than 240 days after the Settlement Administrator's transfer of the Settlement Proceeds to the Qualified Settlement Fund, and in accordance with this Class Action Settlement Agreement, the Settlement Administrator shall begin transmitting Settlement Distribution payments to Legal Representatives of Settlement Class Members and Eligible Heirs.

(2)     The Settlement Administrator shall distribute the Settlement Distribution payment that is due to each Deceased Settlement Class Member to only one Legal Representative of that Settlement Class Member or one Eligible Heir.

(3)     If a Deceased Settlement Class Member shared or was eligible to share in both the 1964 Award Distribution and the 1980 Award Distribution, the one Legal Representative of that Settlement Class Member or the one Eligible Heir shall receive the Settlement Distribution payments relating to both Distributions.

(4)    If a Deceased Settlement Class Member has no Legal Representative or Eligible Heirs, the Settlement Administrator shall distribute the Settlement Distribution payment due to that Deceased Settlement Class Member to the Tribal Plaintiffs.

(5)    Upon the distribution to one Legal Representative of a Settlement Class Member, one Eligible Heir or the Tribal Plaintiffs of the Settlement Distribution payment due to a Deceased Settlement Class Member, Class Counsel and the Settlement Administrator shall have fully discharged any and all duties and responsibilities regarding any and all Settlement Distribution payments.

e.    Final Determination of Unresolved Claims of Legal Representatives of Settlement Class Members and Eligible Heirs

(1)    On or before the 30th day after the Claims Filing Deadline, the Settlement Administrator shall submit to the Parties' counsel and this Court a report about the final administrative determination of claims by Legal Representatives of Settlement Class Members and Eligible Heirs.   The Settlement Administrator's report shall include any recommendations regarding the possible disposition of the unresolved claims of Legal Representatives of Settlement Class Members and Eligible Heirs.

(2)    On or before the 15th day after the submission of the Settlement Administrator's report regarding the final administrative determination of claims by Legal Representatives of Settlement Class Members and Eligible Heirs, Class Counsel shall move this Court to make a final determination of any unresolved claims of Legal Representatives of Settlement Class Members and Eligible Heirs.

(3)     Upon this Court's final determination of any unresolved claims of Legal Representatives of Settlement Class Members and Eligible Heirs, the Settlement Administrator shall make the distributions in accordance with the Court's final determinations.

(4)     Neither Defendants nor Defendants' Counsel shall have any role, duty, responsibilities, or liability in the final determinations of any unresolved claims of Legal Representatives of Settlement Class Members and Eligible Heirs.

3.     <u>Reissuances of Settlement Distribution Payments</u>.     During the Settlement Distribution Period,

a.     If any Settlement Distribution payments are returned because they are undeliverable as transmitted, the Settlement Administrator shall void and re-issue the returned payments (or cause the returned payments to be voided and re-issued) using corrected or updated addresses or other contact information, if available, in accordance with industry practice and assistance from Tribal Plaintiffs.

b.     If any Settlement Class Members lose or misplace their Settlement Distribution payments before negotiating, depositing, or processing them, and the Settlement Class Members inform the Settlement Administrator of that loss or misplacement, the Settlement Administrator shall stop payment (or cause payment to be stopped) on the lost or misplaced Settlement Distribution payments and further re-issue the payments, in accordance with industry practice no later than day 240 from the Claims Filing Deadline.

c.     If any Settlement Class Members change their names and/or addresses or other contact information before they have negotiated, deposited, or processed their Settlement Distribution payments and they inform the Settlement Administrator of the changes, the Settlement

Administrator shall update the Settlement Distribution records and re-issue or stop payment and re-issue (or cause to be re-issued or cause payment to be stopped and re-issued) in accordance with the name and/or address changes or other contact information, if available, in accordance with industry practice and as directed by Class Counsel no later than day 240 from the Claims Filing Deadline.

    4.    <u>Undistributed Settlement Proceeds to Tribal Plaintiffs</u>. On or before the 360th day after the Claims Filing Deadline and in accordance with this Class Action Settlement Agreement, unless Class Counsel assigns other duties to the Settlement Administrator that relate but are additional to those set forth in this Class Action Settlement Agreement, the Settlement Administrator shall distribute the Undistributed Settlement Proceeds to the Tribal Plaintiffs.

    5.    <u>Payment to Settlement Administrator</u>. As outlined next in Section 6, Class Counsel shall authorize monthly payments to the Settlement Administrator, the total of which shall not exceed Three Million Dollars ($3,000,000), unless Class Counsel assigns other duties to the Settlement Administrator that relate but are additional to those set forth in this Class Action Settlement Agreement. Payment for any fees, expenses, and costs associated with any such additional duties shall not be drawn from the portions of the Settlement Proceeds that have been preliminarily or will be finally allocated for Payments to Settlement Class Members or for Payments to Tribal Plaintiffs.

    6.    <u>Settlement Administrator's Cost Accounting, Reporting, and Payment</u>.

    a.    The Settlement Administrator shall maintain separate accountings of the administrative costs of Notice and of Settlement Distribution to the Settlement Class Members associated with each Tribal Beneficiary and with the Non-Member Lineal Descendants group.

b. The Settlement Administrator shall submit detailed invoices of these separate accountings to Class Counsel on a monthly basis.

c. Prior to the establishment of the Qualified Settlement Fund, timely submission to and approval of such invoices by Class Counsel shall obligate timely payment by Class Counsel to the Settlement Administrator. Upon establishment of the Qualified Settlement Fund, payment of such invoices shall be made from the Qualified Settlement Fund.

d. The Settlement Administrator shall submit on a monthly basis to each Tribal Beneficiary, the Non-Member Lineal Descendants group, and Class Counsel detailed reports of Notice and Settlement Distribution costs, accountings of the Qualified Settlement Fund, and any tax administration tasks relating to the Qualified Settlement Fund.

e. On or before the 340th day following the Claims Filing Deadline, the Settlement Administrator shall submit to each Tribal Beneficiary, the NMLD group, and Class Counsel a final report of all Notice and Settlement Distribution costs and a final Qualified Settlement Fund reconciliation.

7. Information Regarding Effect of Federal Income Tax Implications of this Class Action Settlement Agreement. Settlement Class Members may utilize the procedures available to every taxpayer under Revenue Procedures 2018-1, 2018-3, and their successor Revenue Procedures, for seeking information concerning the federal income tax implications of this Class Action Settlement Agreement.

N. **WAIVERS, RELEASES, DISCHARGES, AND COVENANTS**

1. Waivers, Releases, Discharges, and Covenants Not to Sue Regarding Management or Accounting of PJF Before Final Approval. Upon Final Approval, all Settlement Class Members

shall be deemed to have waived, released, forever discharged, and covenanted not to sue the United States, Defendants, any department, agency, bureau, office, or establishment of Defendants, and any officers, employees, or successors of Defendants, in any administrative or judicial forum on any and all claims, causes of action, obligations, and/or liabilities of any kind or nature whatsoever, known or unknown, regardless of legal theory, for any damages or any equitable or specific relief, that are based on harms or violations occurring before Final Approval and that relate to Defendants' management or accounting of the PJF. The claims waived, released, discharged, and covenanted under this Class Action Settlement Agreement and the Tribal Plaintiffs' Settlement Agreement include, but are not limited to, the following:

        a.     All claims, including claims under common law, claims under the American Indian Trust Fund Management Reform Act of 1994, P.L. 103-412; 108 Stat. 4239; 25 U.S.C. § 4001 *et seq.*, claims for equitable or declaratory relief, and claims for trust accounting relating to any PJF monies in any accounts held in trust by Defendants;

        b.     Defendants' alleged obligation to provide a historical accounting or reconciliation for the PJF and Defendants' fulfillment of any such obligation;

        c.     Defendants' alleged mismanagement of the PJF, including but not limited to any claim or allegation that:

             (i)     Defendants failed to make the PJF productive;

             (ii)     Defendants failed to obtain an appropriate return on PJF monies;

             (iii)     Defendants failed to report, provide information about their actions or decisions relating to, or prepare an accounting for the PJF;

(iv)    Defendants improperly or inappropriately managed or distributed

the PJF;

(v)    Defendants failed to invest PJF funds in a timely manner;

(vi)    Defendants failed to obtain an appropriate return on invested PJF

funds;

(vii)    Defendants failed to deposit PJF monies or disburse PJF monies in

a proper and timely manner;

(viii)    Defendants disbursed PJF monies without proper authorization,

including authorization by any Original Individual Beneficiary or Tribal Beneficiary of the PJF;

and

(ix)    Defendants failed to report or provide information about their

actions or decisions relating to any other accounts containing PJF monies that are held in trust by

Defendants for Individual Plaintiffs, and

d.    Defendants' alleged failure to perform trust duties related to the

management of the PJF—as set out in the Complaint (ECF No. 1) or in this Class Action Settlement

Agreement or in the Sixth Amended Complaint (ECF No. 516) in the CFC Companion Case or in

the Tribal Plaintiffs' Settlement Agreement—that were alleged to be owed to Individual Plaintiffs

or to Tribal Plaintiffs at any time, up to the date of the Final Approval in this Class Action or the

date of the full execution of the Tribal Plaintiffs' Settlement Agreement, whichever is later.

2.    <u>Waivers, Releases, Discharges, and Covenants Not to Sue Regarding Allocation,
Distribution, Administration, or Use of Settlement Proceeds By Settlement Administrator,
Individual Plaintiffs, and Tribal Plaintiffs.</u>  Upon their payment of the Settlement Proceeds,

Defendants shall have discharged in full their obligations under this Class Action Settlement Agreement, as well as the Tribal Plaintiffs' Settlement Agreement, regarding the Settlement Proceeds. Defendants shall have no role, duty, responsibility, or liability—including, without limitation, as fiduciary, trustee, or other similar status—whatsoever regarding the allocation, distribution, administration, expenditure, investment, accounting, management, or any other use and handling of the Settlement Proceeds, or any portion thereof, by the Settlement Administrator, Individual Plaintiffs, and Tribal Plaintiffs. All Settlement Class Members shall be deemed to have waived, released, forever discharged, and covenanted not to sue the United States, Defendants, any department, agency, bureau, office, or establishment of Defendants, and any officers, employees, or successors of Defendants, in any administrative or judicial forum on any and all claims, causes of action, obligations, and/or liabilities of any kind or nature whatsoever, known or unknown, regardless of legal theory, for any damages or any equitable or specific relief, that are based on alleged harms or violations relating to the allocation, distribution, administration, expenditure, investment, accounting, management, or any other use and handling of the Settlement Proceeds, or any portion thereof, by the Settlement Administrator, Individual Plaintiffs, and Tribal Plaintiffs.

3.     <u>Waivers, Releases, and Covenants Not to Sue Unaffected by Tolling Provisions.</u>
Nothing in any of the appropriation acts for the Interior Department, which addressed the application of the statute of limitations to claims concerning losses to or mismanagement of trust funds (*see, e.g.,* Department of the Interior Appropriations Act of 2009, Pub. L. No. 111-88, 123 Stat. 2904, 2922 (2009)), and similar provisions in other Interior Department appropriations acts enacted before or after the date of the Final Approval in this Class Action or the date of the full

execution of the Tribal Plaintiffs' Settlement Agreement, whichever is later, shall affect in any way the waivers, releases, and covenants not to sue, as set forth in this Class Action Settlement Agreement or in the Tribal Plaintiffs' Settlement Agreement.

**O. DEFENDANTS' ACTIONS REGARDING UNCLAIMED PJF FUNDS AND SETTLEMENT CLASS MEMBERS' ACCEPTANCES OF DEFENDANTS' COMPLIANCE**

1. <u>Unclaimed PJF-Related Funds from 1964 Award Distribution and 1980 Award Distribution</u>. Defendants continue to hold PJF-related funds allocated for the 1964 Award Distribution and the 1980 Award Distributions that it could not distribute because the Interior Department could not locate the Original Individual Beneficiaries despite diligent efforts. As soon as practicable after Final Approval but not later than one year after Final Approval, Defendants shall identify all PJF-related funds from the 1964 Award Distribution and the 1980 Award Distributions that are "unclaimed" within the meaning of 25 U.S.C. § 164 (75 Stat. 584). Pursuant to 25 U.S.C. § 164, Defendants shall promptly remit to eligible Tribal Beneficiaries any unclaimed PJF-related funds that are so identified and that are eligible for such remittance. Any unclaimed PJF funds that are not eligible for distribution to Tribal Beneficiaries shall be deposited in or transferred to the general fund of the United States Treasury, pursuant to 25 U.S.C. § 164. These provisions regarding unclaimed PJF-related funds and their remittance do not apply to the Settlement Proceeds in this Class Action.

2. <u>One Hundred Percent (100%) Disbursement of PJF-Related Funds</u>. After the remittance of all unclaimed funds to eligible Tribal Beneficiaries under 25 U.S.C. § 164 or to the general fund of the United States Treasury, as set forth in this Class Action Settlement Agreement, Defendants shall no longer hold any PJF funds in trust, except for the tribal shares of the 1980

Award that are congressionally mandated to remain in trust in perpetuity or provisionally under the 1982 Distribution Act.

3. <u>Settlement Class Members' Acceptance of Defendants' Compliance with Applicable Law</u>. All Settlement Class Members accept that Defendants satisfy any duty or responsibility to manage, invest, distribute, account for, and report to the Settlement Class Members regarding the PJF, through Defendants' compliance with applicable provisions of the United States Constitution, treaties, and federal statutes and regulations, as well as any subsequent amendments thereto, as those requirements may be construed by the courts.

4. <u>Settlement Class Members' Acceptance of Per Capita Distribution Obligation</u>. All Settlement Class Members accept that Defendants satisfy any duty or responsibility to disburse funds from the PJF to the Settlement Class Members, through Defendants' compliance with applicable provisions of the United States Constitution, treaties, and federal statutes and regulations, as well as any subsequent amendments thereto, as those requirements may be construed by the courts.

**P. DISMISSAL WITH PREJUDICE AND LIMITED CONTINUING JURISDICTION**

On or before the 10th day after Defendants' payment of the Settlement Proceeds, the Parties shall jointly move to dismiss with prejudice this Class Action and the CFC Companion Case. After the dismissal with prejudice of this Class Action and without impact on the Final Approval, this Court retains continuing jurisdiction only for the limited purposes of

1. Supervising the implementation, administration, enforcement, construction, and interpretation of any and all terms and conditions of this Class Action Settlement Agreement and the Final Approval; and

- 61 -

2.      Resolving any disputes or disagreements that may arise between or among the Parties from the implementation of this Class Action Settlement Agreement.

**Q.      NON-ASSISTANCE BY SETTLEMENT CLASS MEMBERS OR CONSULTANTS**

Settlement Class Members (including, without limitation, the Class Representatives) and Class Counsel's non-legal experts and consultants (who include, without limitation, Class Experts Group, LLC, and Rocky Hill Advisors, Inc.) shall not represent, aid, assist, or support in any way any individual or party in developing, initiating, or litigating a claim that is against the United States, the Interior Department, the Treasury Department, or any other federal agency, and that is waived, released, discharged, and covenanted by the Settlement Class Members under this Class Action Settlement Agreement.  Actions covered by this Class Action Settlement Agreement include, but are not limited to, the use or employment of Class Representatives or Class Counsel's non-legal experts and consultants and the sharing of evidence, documents, materials, analyses, or other information that the Individual Plaintiffs and their counsel's non-legal experts and consultants possess relating to the claims in this Class Action or in the CFC Companion Case.

**R.      INTERPRETATION AND ENFORCEMENT**

1.      <u>Entire Class Action Settlement Agreement Between Parties, Modification, and Non-Severability.</u>  This Class Action Settlement Agreement is the entire agreement between the Parties in this Class Action. All prior conversations, meetings, discussions, drafts, and writings of any kind are specifically superseded by this Class Action Settlement Agreement.  The terms and conditions of this Class Action Settlement Agreement may not be changed, revised, or modified, except as provided by a written instrument that is signed by the Parties to this Class Action Settlement Agreement and that is approved and entered by this Court as an order.  This Class

Action Settlement Agreement shall be effective only upon Final Approval and upon the full execution of the Tribal Plaintiffs' Settlement Agreement. Similarly, the Tribal Plaintiffs' Settlement Agreement shall be effective only upon its full execution by Tribal Plaintiffs and the United States and upon Final Approval of this Class Action Settlement Agreement.

2.     <u>Effects of This Class Action Settlement Agreement and of Tribal Plaintiffs'</u> <u>Settlement Agreement.</u>   This Class Action Settlement Agreement and the Tribal Plaintiffs' Settlement Agreement are the results of compromise and settlement between the Parties in this case and in *Chippewa Cree Tribe*, No. 92-675. This Class Action Settlement Agreement and the Tribal Plaintiffs' Settlement Agreement are not admissions of liability or wrongdoing by any Party, and they shall not be utilized or admissible as precedent, evidence, or argument in any other proceeding, except as may be necessary to ensure compliance with or to carry out their terms and conditions.

3.     <u>Arm's Length Transaction; Materiality of Terms and Conditions</u>. The Parties have negotiated all of the terms and conditions of this Class Action Settlement Agreement at arm's length. In entering this Class Action Settlement Agreement, the Parties rely on all of the terms and conditions of the Class Action Settlement Agreement. If this Court—*sua sponte* or upon petition by any Settlement Class Member for addition to, deletion from, or other change of any material terms or conditions of this Class Action Settlement Agreement—adds to, deletes from, or otherwise changes, in the order or judgment setting out the Final Approval, any of the material terms or conditions of this Class Action Settlement Agreement, the Class Action Settlement Agreement, as well as the Tribal Plaintiffs' Settlement Agreement, shall become voidable by the Parties. The Class Action Settlement Agreement and the Tribal Plaintiffs' Settlement Agreement

- 63 -

shall have no further effect, upon the filing with the Court of a Notice of Withdrawal from Settlement by Class Counsel or Defendants' Counsel, within 30 days (which period may be extended upon joint agreement of the Parties) after the later of the following:

      a.    If no motion for rehearing or reconsideration and/or notice of appeal or a petition for certiorari is filed regarding the Court's material change of this Class Action Settlement Agreement, then the expiration of the time for rehearing or reconsideration, appellate review, and review by petition for certiorari; or

      b.    If a motion for rehearing or reconsideration and/or notice of appeal or a petition for certiorari is filed regarding the Court's material change of this Class Action Settlement Agreement, then after any and all avenues of rehearing, reconsideration, appellate review, or review by petition for certiorari have been exhausted or after the time for seeking such review has expired.

    4.    <u>Compliance with Anti-Deficiency Act</u>. No term or provision of this Class Action Settlement Agreement shall constitute or shall be construed as a commitment or a requirement that Defendants obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable law or regulation. In the event that the Anti-Deficiency Act, any other applicable law, or any regulation precludes Defendants from obligating or paying the sum of money set forth in this Class Action Settlement Agreement and in the Tribal Plaintiffs' Settlement Agreement, the Class Action Settlement Agreement and the Tribal Plaintiffs' Settlement Agreement, including their terms, conditions, dismissals, releases, waivers, and covenants not to sue, shall be deemed null, void, and unenforceable.

5.    Computation of Time.  In computing any period of time prescribed or allowed by this Class Action Settlement Agreement, the day of the act or event from which the period of time begins to run shall be excluded, while the last day of the period shall be included, unless the last day is a weekend day, a legal holiday, or a government shutdown day, in which case the last day shall be the next day that is not a weekend day, a legal holiday, or a government shutdown day.

6.    Captions.  The captions or headings of the sections and paragraphs of this Class Action Settlement Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Class Action Settlement Agreement.

7.    Construction.  The Parties have negotiated and determined the terms and conditions of this Class Action Settlement Agreement by mutual agreement.  Each of the Parties participated fully in the drafting of the Class Action Settlement Agreement, and, therefore, the terms and conditions of the Class Action Settlement Agreement are not intended to be, and shall not be, construed against any Party by virtue of draftsmanship.

8.    Applicable Law. This Class Action Settlement Agreement shall be interpreted in accordance with the laws of the United States without respect to the law of any particular State.

9.    Authority of Parties to Enter Into Class Action Settlement Agreement.  The undersigned representative(s) for each Party certifies that he or she is fully authorized by the Party or Parties whom he or she represents to enter into the terms and conditions of this Class Action Settlement Agreement and to bind legally such Party or Parties to it.

10.    Execution in Counterpart.  This Class Action Settlement Agreement may be executed in one or more counterparts, each of which shall constitute an original, and all of which,

taken together, shall constitute one and the same instrument. Facsimile signatures shall have the same effect as original signatures in binding the Parties.

11.    ADR Process Relating to this Class Action Settlement Agreement.    After the dismissal with prejudice of this Class Action, if there is a dispute over compliance with any term or provision of this Class Action Settlement Agreement, the disputing Party will notify the other Parties in writing of the dispute.  The Parties will attempt to work out the dispute informally, as set forth below, before seeking judicial review by this Court.

a.    The disputing Party will engage the other Parties in informal dispute resolution.  During this informal dispute resolution period, which will not exceed 90 days (unless the Parties agree in writing to an extension of the period) from the date of the transmission of the disputing Party's written communication, the Parties will meet as many times as both deem necessary to discuss and attempt to resolve the dispute.

b.    If the Parties are unable to resolve the dispute through informal dispute resolution, either Party may file a motion asking that this Court enforce the relevant term(s) and provision(s) of this Class Action Settlement Agreement.

12.    No Third-Party Beneficiaries.  This Class Action Settlement Agreement shall not be construed to create rights in, or to grant remedies to, or delegate any duty, obligation or undertaking established herein to any third party as a beneficiary of this Class Action Settlement Agreement.

## III.    FULL EXECUTION OF CLASS ACTION SETTLEMENT AGREEMENT

IN WITNESS WHEREOF, this Class Action Settlement Agreement has been duly executed by the Parties hereto.

Date:  January 22, 2021

MELODY L. MCCOY
CO Bar # 16960, U.S. Dist. Ct. (D.C.) CO043


K. JEROME GOTTSCHALK, *pro hac vice*
NM Bar #3799
Native American Rights Fund
1506 Broadway
Boulder, CO  80302
Tel.: (720) 647-9691 (McCoy)
Tel.: (720) 647-9252 (Gottschalk)
Fax:  (303) 443-7776
Email: Melody@narf.org
Email: Jeronimo@narf.org

Attorneys for Individual Plaintiffs

JEAN E. WILLIAMS
Deputy Assistant Attorney General


Date:  January 22, 2021

ANTHONY P. HOANG
FL Bar #0798193
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, D.C.  20044-7611
Tel.: (202) 305-0241
Fax: (202) 305-0506
Email: Anthony.Hoang@usdoj.gov

Attorneys for Defendants

OF COUNSEL:

DONDRAE N. MAIDEN
GLADYS I. COJOCARI

VICTORIA A. CEJAS
JAMES S. MILLSAP
Office of the Solicitor
United States Department of the Interior
Washington, D.C. 20240

THOMAS B. KEARNS
Office of the Chief Counsel
Bureau of the Fiscal Service
United States Department of the Treasury
Washington, D.C. 20270

## CERTIFICATE OF SERVICE

Pursuant to LCvR 5.3, I hereby certify that, on January 22, 2021, I electronically transmitted the foregoing document to the Clerk of the Court, using the ECF system, for filing and transmittal of a Notice of Electronic Filing to the ECF registrants in this case.

_Anthony P. Hoang_

ANTHONY P. HOANG